No. 81-278

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

JOHN JEFFERY McPARTLIN and
GREGORY McPARTLIN,

Plaintiffs and Appellants,

vs.

DAVID RANDLE FRANSEN et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Third Judicial District,
In and for the County of Powell
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Ted L. Mizner, Deer Lodge, Montana

For Respondents:

Graybill, Ostrem, Warner & Crotty, Great Falls, Montana

---

Submitted on briefs: April 22, 1982

Decided: July 8, 1982

Filed: 1982

Thomas J. Kearney
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is the second time these parties have been before this Court. The first decision, McPartlin v. Fransen & Vose (1978), 178 Mont. 178, 582 P.2d 1255, granted the defendants a second trial. A chronological account of the events preceeding the first trial is reported in our first decision and will not be restated here.

The new trial was held before the Honorable W. W. Lessley on November 6, 1980, in the Third Judicial District, Powell County. The McPartlins now appeal from the judgment of the District Court rendered after the second trial. That judgment terminated the lease agreement, ordered the McPartlins to pay to Fransen certain rent payments and accounts receivable which he had collected, and allowed Fransen to retain as forfeited the $35,000 paid by the McPartlins as a downpayment.

The following issues are presented by the parties:

1. Did the District Court err in determining that the McPartlins made a unilateral mistake?

2. Did the District Court err in concluding that Fransen had a right to take the radio station off the air?

Because we find the lease and sales right agreement illegal, we do not view the issues framed by the parties to be dispositive of this appeal. The primary question is who is entitled to what money in the dispute.

Our holding that the lease and sales right agreement is illegal is in agreement with the decision of the Federal Communications Commission in In Re Application of Deer Lodge Broadcasting, Inc. (1981), 86 F.C.C.2d 1066. This decision was released shortly after the District Court's judgment. The FCC decision states, in pertinent part:

-2-

"[T]here can be no doubt that the license for station KDRG was transferred de facto, without Commission consent, from [Fransen] to the McPartlins by means of the actions that took place pursuant to the 'Lease and Sales Right Agreement' (Agreement) during the period from September 1, 1976 to February 1, 1977. The terms of the Agreement and the manner in which it was implemented, as described in paragraphs 8 through 13 supra, make it clear that Fransen transferred control of KDRG to the McPartlins pursuant to the Agreement as of September 1, 1976, and that this unauthorized transfer of control of the station violated Section 310(d) of the Communications Act as interpreted by the Commission and the courts. As the [Administrative Law Judge] observed, the evidence establishes that, during the relevant period of time, Mr. McPartlin, who was the lessee of KDRG pursuant to the Agreement, paid the station's bills, hired the employees, set broadcast policy, handled tax matters, obtained insurance, changed the station's business accounts to his name, set up a checking account for KDRG, kept the books, established a $10,000 line of credit to operate the station and otherwise assumed control of KDRG. In addition, McPartlin could not be fired and was not on salary; his compensation depended on the profit or loss from station advertising. [Fransen] had to give a 30-day default notice for violation of the Agreement in order to regain physical control of the KDRG assets. . ." 86 F.C.C.2d at 1094.

"Thus, it appears that Mr. Fransen, who is the sole owner of Deer Lodge, did not intend to surrender as much control over KDRG's operation as the literal wording of the Agreement indicated he would surrender, and that he did not understand that, taken literally, the Agreement provided for an unauthorized transfer of control of station KDRG. . ." 86 F.C.C.2d at 1098.

Section 28-2-603, MCA, provides:

"When contract wholly void. Where a contract has but a single object and such object is unlawful, whether in whole or in part,. . . the entire contract is void."

Section 28-2-601, MCA, defines the "object" of a contract:

"The object of a contract is the thing which it is agreed on the part of the party receiving the consideration to do or not to do."

The agreement contemplated a de facto transfer of the license of station KDRG without the consent of the Commission required by 47 U.S.C. § 310(d). Such transfer was the single object of the contract and because the object is unlawful, the agreement is void. Section 28-2-603, MCA.

-3-

The next question is how to deal with the money claimed to be owed by virtue of the illegal agreement. The District Court's judgment on this question is set out at the beginning of the opinion. We partially affirm and partially reverse the District Court.

We adhere to the law in McManus v. Fulton (1929), 85 Mont. 170, 278 P. 126, where we stated:

> "As we said in Glass v. Basin & Bay State Min. Co., 31 Mont. 21, 77 P. 302, quoting from Dean Lawson's article in Cyc. p. 546: 'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim . . . The law, in short, will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back.'" (Emphasis added.) 85 Mont. at 182-183, 278 P. at 131.

As applied to the present case, McManus dictates the following results:

1.  The $35,000 downpayment paid by McPartlin to Fransen shall be retained by Fransen.

2.  The $7,581.80 collected by the McPartlins upon accounts receivable owned by Fransen shall be retained by the McPartlins.

3.  The McPartlins are not required to pay the $6,000 in unpaid rent ordered by the District Court.

Costs to the appellants.

John C. Sheehy
Justice

-4-

We Concur:

_Ace_ B. Daly _____

_John Conway Harrison_ _____

_Frank B. Morrison_ _____

_____
Justices