No. 86-177

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

POWDER RIVER COUNTY BANK,
        Plaintiff, Counter-Defendant and
        Respondent,

-vs-

ARNESS-McGRIFFIN COAL COMPANY, a Colorado
Corporation, and SAM K. ARNESS,
        Defendants, Counter-Plaintiffs and
        Appellants.

POWDER RIVER COUNTY BANK,
        Plaintiff, Counter-Defendant,

-vs-

SAM K. ARNESS,
        Defendant, Counter-Plaintiff.

APPEAL FROM: District Court of the Sixteenth Judicial District,
        In and for the County of Powder River,
        The Honorable Alfred Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:
        Cate Law Firm; Jerome J. Cate argued, Billings,
        Montana

    For Respondent:
        Lucas & Monaghan; Thomas Monaghan argued, Miles City,
        Montana

Submitted: October 21, 1986
Decided: February 19, 1987

Filed: FEB 19 1987

_Ethl M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Sam Arness appeals a Powder River County District Court order granting summary judgment to the Powder River County Bank (the Bank) on Arness' four counterclaims against the Bank. The sole issue on appeal is whether the court erred in dismissing appellant's counterclaims on the basis that those claims arose out of, and were dependent upon, an illegal loan agreement. We affirm.

Beginning at least in 1980, the Bank made various loans to appellant personally and to several businesses with whom appellant was affiliated. Appellant personally guaranteed the loans made to the businesses (Arness-McGriffin Coal Co., Eastmont Forest Products, and Arness-Anderson Corp.). In April 1982, the Bank filed two separate complaints to collect amounts due on the loans. One complaint named appellant alone as the defendant and sought to collect approximately $691,000 allegedly due on the loans. The other complaint named appellant and Arness-McGriffin Coal Co. (Arness-McGriffin) as defendants and sought to collect approximately $234,000 allegedly due on the loans. In July 1982, the defendants in both actions filed answers to the complaints and denied the Bank's claims. In August 1982, the Bank, Arness and Arness-McGriffin entered into a loan agreement which provided that the Bank would take no action to prosecute the two civil actions for one month; that the Bank would dismiss both actions with prejudice upon the satisfaction of certain conditions precedent; that Arness and Arness-McGriffin acknowledged that they were indebted to the Bank for over one million dollars; that the Bank agreed to renew the indebtedness and to loan additional funds to Arness and Arness-McGriffin; and that Arness and Arness-McGriffin

would execute two promissory notes and secure the notes with diverse assets.

On September 14, 1982, the Montana State Department of Commerce issued a "Notice Of Charges And Hearing And Temporary Cease And Desist" directed to the Bank. This order stated in pertinent part:

> [t]he Department . . . alleges
>
> . . .
>
> 3. The Bank and its management have engaged and are continuing to engage in unsafe and unsound banking practices as are evidenced in the charges which follow.
>
> 4. Disclosures made in the examination of the Bank by the personnel of the Federal Reserve Bank of Minnesota during the period of August 30 through September 10, 1982 indicate that the Bank is in an unsound condition and is not in compliance with the laws of the state of Montana to the following extent:
>
> . . .
>
> d. Unsecured loans and overdrafts extended to Arness-Anderson, Inc. exceed the legal lending limit of the Bank pursuant to section 32-1-432, MCA ($240,000) and have been in excess of this amount since before the August 31, 1981 examination of the Bank by the Federal Reserve Bank of Minnesota and as disclosed in the March 15, 1982 examination by the state of Montana;
>
> e. Unsecured loans and overdrafts extended to Eastmont Forest Products, Inc. and its subsidiary, Northern Cheyenne Forest Products, Inc., have exceeded the legal lending limit since before the August 31, 1981 examination of the Bank by the Federal Reserve Bank of Minnesota;

f. The April 8, 1982 letter of transmittal of the state of Montana examination dated March 15, 1982 included a directive, given under the authority of section 31-1-432, MCA to reduce the total loans to Sam Arness and his interests to $480,000. The Bank has not complied with this directive;

g. The Department has reasonable cause to believe that the Bank may be considering a further extension of credit to Sam Arness and his interests in a substantial amount which would be a further violation of section 32-1-432, MCA and the Bank's lending limit as well as a violation of the April 8, 1982 letter of transmittal;

. . .

1. The Bank is ordered to cease and desist in advancing any additional funds or loans to Sam Arness and all his business or corporate interests;

2. The Bank is ordered to cease its noncompliance with the April 8, 1982 directive by disposing of all loans to Sam Arness and his appropriate interests which exceed $480,000;

. . .

Section 32-1-432(1)(a), MCA, states:

The total loans to a person, partnership, or corporation by a bank, including loans to a partnership and to the several members thereof, shall at no time exceed 20% of the amount of the unimpaired capital and surplus of that bank.

In October 1982, the defendants in both actions (appellant alone in one action and appellant and Arness-McGriffin in the other) filed amended answers to the complaints. In October 1983, the defendants again filed

4

amended answers in both actions. The answers in both actions denied that the amounts sued upon were due, set up the August 1982 loan agreement as an affirmative defense, and counterclaimed against the Bank for breach of the loan agreement. The October 1982 answers pray for specific performance of the loan agreement or, in the alternative, for damages. The October 1983 answers simply ask for damages. In November 1983, the Bank filed a reply to the affirmative defense and alleged four affirmative defenses to the counterclaim. In August 1984, Arness and Arness-McGriffin filed a second (actually third) amended answer and counterclaim consolidating both cases into one pleading. This answer reiterates the allegations of the previous answers and adds three new counterclaims. These new counterclaims, plus the one previously alleged, are (1) for breach of the loan agreement, (2) that the Bank's "repudiation of the subject contract constituted bad faith and unfair dealing in a commercial context" giving rise to a cause of action in tort, (3) for intentional infliction of emotional distress in that the Bank's actions "in repudiating the contract were outrageous in nature", and (4) the fourth counterclaim realleges the allegations of the first three counterclaims and further claims that the Bank acted maliciously, oppressively and in wanton disregard of appellant's rights.

In February 1985, the Bank moved for summary judgment on all of the counterclaims of appellant and Arness-McGriffin. In moving for summary judgment on the counterclaims, the Bank relied solely on one affirmative defense, i.e., that the counterclaims were barred because they arose out of an illegal loan agreement. The District Court agreed with the Bank's contention and, in March 1986,

5

the court granted summary judgment to the Bank on the counterclaims. This appeal followed.

> The standard of review is clear. Summary judgment is only proper under Rule 56(c), M.R.Civ.P., where the record discloses that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Mutual Service Cas. Ins. Co. v. McGehee (Mont. 1985), 711 P.2d 826, 827, 42 St.Rep. 2038, 2039-2040. Summary judgment was properly granted here as there was no disputed issue of material fact. The Commerce Department's notice to the Bank conclusively established, and appellant does not dispute, the determinative fact in this case. That fact is that the loan agreement is an illegal contract.

The Commerce Department's notice established that the loan agreement authorized loans in excess of the Bank's legal lending limit. The agreement was contrary to an express provision of law, § 32-1-432, MCA, (cited above). Therefore, that agreement was unlawful under § 28-2-701, MCA, and void under § 28-2-603, MCA.

Given that the contract was illegal, appellant cannot successfully pursue a counterclaim depending on and arising out of the contract. That is exactly what appellant attempts. Recently, this Court reaffirmed the rule that:

> "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim . . . The law, in short, will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or

6

> set it aside at the suit of the other, or, <u>when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back.</u>" (Citations omitted.) (Emphasis in original.)

McPartlin v. Fransen (1982), 199 Mont. 143, 146-147, 648 P.2d 729, 730-731, quoting McManus v. Fulton (1929), 85 Mont. 170, 182-183, 278 P. 126, 131. Appellant's own language in the counterclaims demonstrates he seeks damages for an alleged breach of the illegal agreement. Count I is for breach of contract. Counts II and III both rely on the Bank's alleged "repudiation of the contract." Count IV realleges the previous allegations and labels the conduct malicious, oppressive and in wanton disregard of appellant's rights. Under the rule cited in <u>McPartlin</u>, the District Court properly granted summary judgment to the Bank on appellant's counterclaims.

Appellant argues that he is not in pari delicto (equally at fault) in comparison to the Bank and that he should therefore be allowed to pursue his claims. Montana cases have established that under certain circumstances a plaintiff may pursue a claim based on an illegal contract where the plaintiff is not in pari delicto. See Clifford v. Great Falls Gas Co. (1923), 68 Mont. 300, 216 P. 114; Carroll v. Beardon (1963), 142 Mont. 40, 381 P.2d 295. Both the <u>Clifford</u> case and the <u>Carroll</u> case are limited to very particular situations and specific illegal contracts. Neither of those decisions are applicable to the case at bar.

Courts and commentators agree that public policy plays a large role in deciding whether a plaintiff can enforce, sue on, or collect sums paid on an illegal contract. See, e.g.,

7

Jackson Purchase, Etc. v. Local Union 816, Etc. (6th Cir. 1981), 646 F.2d 264; Golberg v. Sanglier (Wash. 1982), 639 P.2d 1347; 6A A. Corbin, Corbin on Contracts, § 1533, p. 809 (1962). In this case, the legislature has articulated a public policy under § 32-1-432, MCA, that the depositors of a bank should be protected. To allow appellant to pursue his claims against the Bank would circumvent that public policy. We find that public policy militates against allowing appellant to pursue his claims. Given that policy and the McPartlin decision, we hold that the District Court correctly granted summary judgment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy:

I dissent.

_____
Justice

8