No. 90-437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

PORTABLE EMBRYONICS, INC.,

       Plaintiff and Respondent,

  vs.

J.P. GENETICS, INC., ALTON JAMES
and GARY A. PORTER,

       Defendants and Appellants.


APPEAL FROM:  District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           John C. Hoyt, argued; Hoyt & Blewett, Great Falls,
           Montana

       For Respondent:

           James H. Goetz, argued; Goetz, Madden & Dunn,
           Bozeman, Montana


                      Submitted: March 7, 1991

                       Decided:  May 3, 1991

Filed:

<br>

_____
               Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eighteenth Judicial District. Plaintiff brought this action alleging breach of employment contracts and related tortious conduct by defendants. Following a bench trial the District Court entered judgment and awarded damages in favor of the plaintiff. From this judgment and order, defendants appeal. We reverse.

The following issues are presented by appellants for review:

1. Did the District Court err in denying defendants judgment as a matter of law based on illegality of the employment contracts?

2. Did the District Court err in denying defendants judgment as a matter of law based on provisions within the employment contracts that unlawfully restrain trade?

3. Did the District Court err in concluding that a factual basis existed for finding against defendants?

4. Did the District Court err by awarding damages contrary to the facts of this case?

At the time of the alleged breach of contract, plaintiff Portable Embryonics, Inc. (Portable) was in the business of performing nonsurgical bovine embryo transfers in Montana and other states. Dr. Albert C. Mills, III, (Mills) and his wife are the sole shareholders of Portable. Defendants Gary Porter (Porter) and Alton James (James) were employed by Portable from 1977 until 1988. Porter and James terminated their employment with Portable in February of 1988 and, within a few days, formed defendant J.P. Genetics, Inc., a Montana corporation. J.P. Genetics, Inc. also

performs nonsurgical bovine embryo transfers.

The first step of the nonsurgical embryo transfer begins with a superior cow, the donor, which is selected by the rancher. The cow is given a fertility drug which induces the ovulation of multiple eggs. These eggs are then fertilized either by artificial or natural insemination. Approximately one week later the fertilized eggs are removed from the donor cow by a process called "flushing." Next, the technicians identify, with the aid of a microscope, the fertilized eggs as embryos, and then either implant the embryos into recipient cows, which serve as surrogate mothers, or freeze them for later use. The removal, identification, and implantation or freezing of the embryos are performed by embryo transfer technicians such as Mills, Porter and James.

In the spring of 1980, Portable prepared an employment contract which contained provisions for the protection of trade secrets and restrictions concerning employees who would depart the company. James signed the contract on April 17, 1980 and Porter signed on May 6, 1980.

Due to alleged problems with the business, Porter terminated his employment with Portable on February 20, 1988. The next day, James informed Dr. Mills that he was also quitting. Shortly thereafter, Mills discovered that Porter and James had already formed their new embryo transfer business--J.P. Genetics, Inc. As a result, Mills travelled to Montana to discuss business with the Montana ranchers who had been regular clients of Portable. During his travels, he learned that Porter and James sent out a letter on February 18, 1988 soliciting business from Portable Embryonics

3

clients: "It is with enthusiasm that I announce my partnership with Sonny James in a new company: J.P. Genetics, Inc." He also found that all the Montana clients intended to stay with Porter.

Portable filed suit in March, 1989, alleging breach of contract, breach of loyalty, fraud and bad faith. On October 19, 1989, defendants filed a motion for summary judgment, arguing that the underlying contract was for an illegal purpose and constituted an unlawful restraint on trade. The District Court denied that motion by order dated February 28, 1990. Following a bench trial in March, 1990, the District Court concluded that actual and constructive fraud, breach of the duty of loyalty and the covenant of good faith and fair dealing existed in Porter's and James' actions to steal Portable's business from the Montana clients.

The District Court was particularly interested in evidence which tended to show that the plans of Porter and James to compete with Mills were formed and furthered while Porter and James were still employed by Portable. The District Court, in its findings of fact, listed various sales slips and invoices, which demonstrated that Porter and James, while still employed by Portable, planned for and implemented purchases for their new business. The District Court found that Porter and James set up their business in Montana in advance of informing Portable that they were leaving and that Porter and James harmed Portable by concealing these plans. Based on findings of fact and conclusions of law generally favorable to Portable, the District Court entered judgment against defendants in the amount of $75,000.

The first issue presented for review is whether the District Court erred in denying defendants judgment as a matter of law based on illegality of the employment contract.

Defendants contend that the purported employment agreements were contracts for an illegal purpose in Montana and are therefore unenforceable--the illegal purpose being the practice of veterinary medicine without a license. Based on our reasoning set out below, we hold that the contract is void for an illegal purpose.

Section 28-2-601, MCA defines the object of a contract as "the thing which it is agreed on the part of the party receiving the consideration to do or not to do." Based on this statute and the evidence in the record, we find that the underlying and primary object of the subject employment contract was to perform embryo transfers on livestock in Montana. According to § 28-2-701, MCA, the object of the subject employment contract is not lawful if it is "contrary to an express provision of law." Prior to 1989, during the period of time that Portable employed Porter and James as its embryo transfer technicians, § 37-18-102(1)(f), MCA, characterized "ova or embryo transfer" on animals as the practice of veterinary medicine. Section 37-18-501, MCA, assigns a misdemeanor violation to any person who practices veterinary medicine without a license. We find that none of the parties were trained or licensed veterinarians during the time that Portable contracted with Porter and James to perform embryo transfers in Montana. Therefore, we conclude that the object of the contract was unlawful at the time the contract was entered into and

performed. This conclusion becomes the minor premise of the episyllogism whose major premise is found in § 28-2-603, MCA, which provides: **"When contract wholly void.** Where a contract has but a single object and such object is unlawful, whether in whole or in part, . . . the entire contract is void." We therefore conclude, as a necessary result based on deductive reasoning, that the entire employment contract is resultingly void.

It is clear that a party to an illegal contract cannot use the courts of this state to enforce the agreement.

> No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim . . . . The law, in short, will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore, neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back.

Glass v. Basin & Bay State Mining Co. (1904), 31 Mont. 21, 33, 77 P. 302, 305 (quoting 9 D. Lawson, Cyclopedia of Law and Procedure 546). Accord McManus v. Fulton (1929), 85 Mont. 170, 182-83, 278 P. 126, 131; McPartlin v. Fransen (1982), 199 Mont. 143, 146-47, 648 P.2d 729, 730-31; MPH Company v. Imagineering, Inc. (1990), 243 Mont. 342, 349, 792 P.2d 1081, 1086.

In the alternative, Portable asserts that even if the employment contracts are unenforceable based on illegality, the District Court's findings and conclusions were proper since they were based on tort and, therefore, do not depend at all on the enforceability vel non of the employment contract. Portable argues

6

that its claim is based upon the implied covenant of good faith and fair dealing and upon breach of fiduciary duties and is independent of the illegality issue of the written employment contracts. To the contrary, whether characterized as arising from the written contract or from the employment relationship, each and every allegation Portable has asserted in its claim against defendants is based upon an agreement, the object of which was illegal under Montana law. No matter how Portable wishes to portray its case, it is inarguable that Portable's entire suit is grounded in defendants' alleged breach of an employment contract; a contract which was void based on its illegal purpose.

We hold that the object of the contract in question, according to the laws of this state as they existed during pertinent times, was for an illegal purpose and that the contract is therefore void. Neither party may now come into our courts and seek damages for breach of that agreement. We need not consider the other issues presented since our holding on this issue is dispositive of this appeal.

The judgment of the District Court is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

7

_____

_____

_____

_____
                    Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the opinion of the majority that the employment agreements which the plaintiff sought to enforce were for an illegal purpose and therefore, unenforceable. I also concur in the majority's result which denied recovery to the plaintiff, pursuant to its theories grounded in tort. However, I would deny recovery in tort because there is an absence of proof of damages flowing from the facts which plaintiff alleges were tortious.

Plaintiff alleged that it was damaged when it lost clients due to the departure of the defendants. However, in its Finding No. 63, the District Court stated:

> Plaintiff relied solely on Mills' testimony regarding damages. Plaintiff presented no testimony from any former client regarding whether they would have continued to use plaintiff's services if Porter and James terminated their employment with plaintiff but did not continue to do embryo transfer work in Montana. Defendants called two former Portable Embryonics customers to testify at trial. Both testified that they did not like the treatment by Mills of their cows, and would not have continued to use Mills or plaintiff for their embryo transfer work after Porter and James terminated employment with plaintiff. . . .

In its Finding No. 64, the District Court also pointed out that of the ten ranches to whom plaintiff provided embryo transfer work prior to the departure of the defendants, all have either discontinued that kind of work, gone out of business, hired in-house technicians, or substantially reduced their requirements.

Plaintiff also sought recovery for miscellaneous items of damage, including the training of new people to replace the defendants. However, in Finding No. 65, the District Court found

9

that the plaintiff failed to prove the dollar amount associated with these miscellaneous expenses.

On appeal, plaintiff contended that he was damaged by the defendants' departure without notice because it left him unprepared to service clients in the southern part of the country later on in the spring of 1988. However, defendants testified that they would have continued to assist the plaintiff, had he not insisted that they terminate employment immediately, and the District Court found, in Finding No. 41, that plaintiff did not ask for assistance from the defendants after they left his employment.

After all of these findings, the District Court concluded, as a matter of law, that plaintiff was entitled to damages in the amount of $75,000 without indicating any objective basis for those damages.

I would agree that in commercial transactions of this type the finder of fact should be given wide latitude in arriving at an award of damages. However, there has to be some objective basis for the damage award, and in this case it was totally unsupported by any evidence.

For these reasons, I would reverse the judgment of the District Court and deny recovery, pursuant to the plaintiff's claims grounded in tort, regardless of the relationship of those claims to an illegal contract.

_____
Justice

Justice William E. Hunt, Sr.:

I concur in the special concurring opinion of Justice Trieweiler.

William E Hunt Sr
Justice

11