JUSTICE WARNER
dissents.
¶36 I dissent. The Court entirely misses the point of the HRC’s decision as well as that of the District Court. A discrimination in employment claim implicitly requires an employment relationship. Section 49-2-303(1), MCA; Hanson v. Dix, 2004 MT 263N, ¶ 14, 323 Mont. 537, ¶ 14, 100 P.3d 167, ¶ 14. The HRC and the District Court were both correct in concluding that the alleged sexual harassment of Schmidt did not occur in an employment context.
¶37 As noted by the Court, Elvin advertised for a live-in maid. It does not take a rocket scientist to understand why he did not publically advertise that he was seeking a prostitute to work in the motel. As noted by the District Court, the record reflects that prior to the interview with Elvin, Schmidt knew full well that the job was really to provide sex. Schmidt had just spent the night at the motel with her friend who told her she worked there as a prostitute. When she engaged in the incredibly crude one-half to one hour interview with Elvin on September 29, there was no discussion of employment as a maid. Although Schmidt testified she was asked to make abed, this is the only conceivable connection the interview had to any housekeeping or any other legitimate employment duties. Nor was there any discussion of any compensation to be paid for services as a motel maid either in Great Falls, or in Las Vegas. Schmidt did not testify that she was ever offered any work as a maid, nor did she say that there was any compensation offered, or even discussed, for maid services. The only discussion of a quid pro quo in either of her interviews with Elvin was that she, herself, could earn between $20,000 to $40,000 per month for her sexual services. There was no discussion of Elvin or the Triple Crown paying her anything. When she agreed to go into the business, she was told she would be required to live in a room at the motel so that she would be available at all times to service customers, not clean rooms.
¶38 The hearings examiner did find, with no direct support from the record, that Schmidt was offered a job as a prostitute working for the Triple Crown Motel. There is no evidence that Elvin or the Triple Crown ever offered to employ Schmidt at all, much less as a maid. The *212 evidence is more indicative that she would be working for herself as a prostitute. However, if the finding of fact by the hearings examiner, that Schmidt was to work for the motel, is sustained based on circumstantial evidence, there still can be no employment relationship.
¶39 An employment relationship is contractual in nature. Gentry v. Douglas Hereford Ranch, Inc., 1998 MT 182, ¶ 38, 290 Mont. 126, ¶ 38, 962 P.2d 1205, ¶ 38; Craver v. Waste Mgmt. Partners of Bozeman (1994), 265 Mont. 37, 45, 874 P.2d 1, 5 (overruled on other grounds by In re Estate of Lande, 1999 MT 179, 295 Mont. 277, 983 P.2d 316).
¶40 A contract requires a lawful object. Section 28-2-102(3), MCA. A lawful object is one that is not contrary to an express provision of law, or otherwise contrary to good morals. Section 28-2-701(1), (3), MCA. The object of the employment offered was prostitution. See § 28-2-601, MCA. It was unlawful for Elvin to procure Schmidt as a prostitute to work in his brother’s motel. Section 45-5-602(l)(b), (c), MCA. Whether or not one believes Schmidt was, in her own mind, only considering exchanging sex for compensation, the record makes it abundantly clear that she agreed with Elvin that she would do it. It was unlawful for Schmidt to agree to engage in prostitution. Section 45-5-601(1), MCA. Contracts made in violation of express statutes are contrary to public policy and void. Glens Falls Ins. Co. v. Irion (D.C. Mont. 1970), 323 F.Supp. 1164, 1176; Hutterian Brethren v. Haas (D.C. Mont. 1953), 116 F.Supp. 37; Glass v. Basin & Bay State Mineral Co. (1904), 31 Mont. 21, 31-32,77 P. 302, 304. Specifically, an employment contract entered into for an illegal purpose is void. Such a contract is unenforceable and actions arising from any such contract cannot be maintained. Portable Embryonics, Inc. v. J.P. Genetics, Inc. (1991), 248 Mont. 242, 245-46, 810 P.2d 1197, 1198-99.
¶41 Assuming, arguendo, that making beds was actually a part of the employment to be undertaken by Schmidt, it makes no difference at law what interpretation the Court or I place on this part of Schmidt’s interview, nor do the words we may use to describe it. It cannot be gainsaid that prostitution was an integral part of the proposed arrangement. Considering the amount of compensation involved, and that there was none offered for maid services, there was to be but a single consideration passing between the parties, and most certainly any contract was not severable between making beds and prostitution. If either part of the separate and distinct acts to be performed, that is, making beds or providing sex, is unlawful or void, the entire contract is void. See Kelly v. Silver Bow County (1951), 125 Mont. 272, 275, 233 P.2d 1035, 1036; see also In re Cummings Estate (1931), 89 Mont. 405, *213 413, 298 P. 350, 352.
¶42 There being no possible employment relationship between Schmidt and any defendant in this matter, both the HRC and the District Court were entirely correct to conclude as a matter of law that any alleged sexual harassment or discrimination did not occur in an employment context, and thus dismiss the petition.
¶43 The law must have no tolerance whatever for the reptilian conduct of Elvin, his brother Bob Cook, or their business. Still, the Court’s unwarranted expansion of the Human Rights Act to mandate recovery by a willing participant in criminal conduct, only foiled when her mother called the cops forcing her to turn in her accomplice, defeats the act’s noble purpose and must ultimately weaken its effectiveness. I dissent.